UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

|  |  |  |
|---|---|---|
| STEVEN ANTHONY AZAR[1], | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-CV-0348-ERW |
| | ) | |
| NANCY A. BERRYHILL, Deputy | ) | |
| Commissioner of Operations for | ) | |
| Social Security,[2] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is a *pro se* action under Title 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security ("Commissioner") denying the application of

Steven Azar ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI, 42 U.S.C.

§§ 1383, *et seq.* For the reasons set forth below, the Court affirms the decision of the

Commissioner.

### I.  Procedural History

Plaintiff filed his application for SSI on June 9, 2014.[3]  (Tr. 10, 160-65.)  Plaintiff

claimed he became disabled on May 1, 2013, because of depression, anxiety, a pinched nerve in

his right hip and leg, high blood pressure, and hernia surgery.  (Tr. 258, 264.)  Plaintiff was

initially denied relief on July 16, 2014.  (Tr. 65-80.)  At Plaintiff's request, a hearing was held on

May 23, 2016, before an Administrative Law Judge ("ALJ").  (Tr. 34-47.)  Both Plaintiff and a

---

[1] This case is styled as "Steven Anzar v. Nancy A. Berryhill."  However, in the administrative record, Plaintiff's name appears as "Steven Azar" and Plaintiff signs his brief the same way.
[2] Nancy A. Berryhill's term as Acting Commissioner of Social Security expired in November 2017. She continues to lead the agency as Deputy Commissioner of Operations.
[3] Plaintiff has previously filed two applications for disability insurance benefits.  His claims were denied effective September 8, 2011, and March 22, 2012.  (Tr. 62, 64, 66.)

vocational expert testified at this hearing. At the hearing, the ALJ ordered physical and psychological consultative examinations and requested medical source statements. Thereafter, the ALJ held another hearing at which Plaintiff, two medical experts and a vocational expert testified. (Tr. 48-61.) After the hearing, by a decision dated December 30, 2016, the ALJ found Plaintiff was not disabled. (Tr. 23-40.) Plaintiff requested the Appeals Council review the ALJ's decision, stating, "I think the decision was wrong because of my health conditions." (Tr. 158.) On January 12, 2018, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 1-6.) Thus, the ALJ's decision stands as the final decision of the Commissioner.

In this action for judicial review, Plaintiff contends the Commissioner's decision was not based on substantial evidence in the record. In his complaint, Plaintiff claims he "feel[s he is] entitled to disability because of the nature and amount of illnesses that [he has]." (ECF 5 at 1.) Plaintiff alleges no other arguments in favor of reversal. Instead, Plaintiff provides only a list of his impairments and related symptoms. (ECF 17.) Defendant has filed a brief in support of the answer (ECF 22) and a statement of additional facts (ECF 22-1).

## II. Evidentiary Hearing Before the ALJ

On May 23, 2016, Plaintiff testified about his vocational history at his administrative hearing. (Tr. 34-41.) His past work included the job of assembler. (Tr. 41, 42.) Plaintiff identified anxiety, depression, high blood pressure, and nerve pain in his leg as his medical conditions. (Tr. 44.) Plaintiff testified he took Glipizide and naproxen sodium for nerve pain and was also taking medication for anxiety and depression. (Tr. 44.) At the hearing, the ALJ observed there were no medical source statements in the record and determined additional

evidence was needed to adjudicate the case. (Tr. 44-45.) Accordingly, the ALJ ordered consultative examinations and requested medical source statements. (Tr. 4.5.)

The ALJ held a second administrative hearing on November 22, 2016. (Tr. 47-61.) At the hearing, Chukwuemeka Ezike, M.D., testified Plaintiff had the severe impairments of diabetes mellitus, obesity, and lumbar disc disease. (Tr. 52-53.) Dr. Ezike opined Plaintiff did not meet a listed impairment. (Tr. 53.) He stated Plaintiff could lift up to 50 pounds occasionally and 20 pounds frequently; he could sit for 6 hours per 8-hour workday; stand for 3 hours per 8-hour workday; and walk for 3 hours per 8-hour workday. (Tr. 54, 55-56.) Dr. Ezike stated Plaintiff could occasionally climb stairs or ramps, balance, bend, crawl, kneel, squat, and stoop, but never climb ropes, ladders, or scaffolds. (Tr. 53.) He opined Plaintiff had no manipulative, environmental, or foot-control limitations. (Tr. 53-54.)

At this same hearing, James Reid, Ph.D., testified. (Tr. 56-59.) Based upon his review of the evidence, Dr. Reid noted that Plaintiff had anxiety and depression, but did not meet a listing. (Tr. 56.) He stated Plaintiff had mild limitations in activities of daily living; social functioning; and concentration, persistence, and pace. (Tr. 56-57.) Dr. Reid also noted Plaintiff had no episodes of decompensation.[4] (Tr. 57.) He concluded Plaintiff's mental impairments were non-severe and Plaintiff did not have mental work-related limitations. (Tr. 57.)

---

[4] "Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (2013).

A vocational expert also testified at the hearing. The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and past work experience who can could lift and carry 50 pounds occasionally and 20 pounds frequently; stand up to 3 hours in an 8-hour workday; walk up to 3 hours in an 8-hour workday; and sit up to 6 hours in an 8-hour workday; never climb ladders, ropes, and scaffolds; occasionally climb ramps or stairs; occasionally balance, stoop, kneel, crouch, and crawl. The vocational expert testified a person with these restrictions could work at a light exertional level and could return to his past work as an assembler. (Tr. 54-55.)

### III.    Medical Evidence

On September 15, 2014, Plaintiff saw Dr. Gina McCrary-Smith, D.O., at North Central Community Health Center (NCCHC) for medication refills, right hip and leg pain, and nasal congestion. (Tr. 484-85.) Dr. McCrary-Smith indicated Plaintiff was alert and cooperative with normal muscle strength and tone throughout with no atrophy, spasticity, or tremors, and a normal gait and station. (Tr. 484-85.) Plaintiff's mental-status examination showed normal affect and speech. (Tr. 485.) Dr. McCrary-Smith assessed right hip pain; diabetes mellitus, type 2, uncomplicated; obesity; and allergic rhinitis. (Tr. 485.) She recommended Plaintiff follow-up in three months; continued norvasc (high blood pressure), lisinopril (high blood pressure), gabapentin (nerve pain medication), cyclobenzaprine (muscle relaxant), and lorazepam (benzodiazepine for anxiety); started loratadine (antihistamine) and flonase (steroid).

Plaintiff returned to Dr. McCrary-Smith on December 15, 2014, for medication refills, a rash, anxiety, and depression. (Tr. 481-83.) Upon examination, Plaintiff was alert and cooperative with normal muscle strength and tone throughout with no atrophy, spasticity, or tremors, and a normal gait and station. (Tr. 481-82.) The mental-status examination showed a

normal affect and speech.  (Tr. 481-82.)  Dr. McCrary-Smith assessed diabetes mellitus, type 2, uncomplicated; benign essential hypertension; anxiety and depression; and a skin abscess.  (Tr. 482.)  She started alprazolam (sedative for anxiety) and bactrim (for a skin/soft tissue abscess) and continued naproxen sodium (nonsteroidal anti-inflammatory drug), cyclobenzaprine, and loratadine.  (Tr. 482.)

On March 2, 2015, Plaintiff returned to Dr. McCrary-Smith for medication refills, anxiety, and blurred vision.  (Tr. 473-75.)  Upon examination, Plaintiff was alert and cooperative with normal muscle strength and tone throughout with no atrophy, spasticity, or tremors, and a normal gait and station.  (Tr. 473-74.)  The mental-status examination showed a normal affect and speech. (Tr. 474.)  Dr. McCrary-Smith assessed diabetes mellitus with neurological manifestations; blurred vision; and anxiety.  (Tr. 474.)  She started metformin (anti-diabetic medication) and referred Plaintiff to a nutritionist; clinical pharmacist; and an eye doctor.  Dr. McCrary-Smith continued alprazolam, lisinopril, norvasc, and gabapentin.  (Tr. 474.)

On April 30, 2015, Plaintiff saw clinical pharmacist, Justinne Guyton, PharmD, for diabetic care.  (Tr. 471.)  Plaintiff admitted his recent weight gain of 30 pounds had negatively impacted his blood glucose control.  (Tr. 471.)  He stated that he walked two-to-three miles to the grocery store several times each week.  (Tr. 471.)  Plaintiff was unwilling to start insulin.  (Tr. 471.)  The pharmacist increased metformin, started glipizide (anti-diabetic medication), and provided education on diabetes.  (Tr. 471.)

Plaintiff returned to Dr. McCrary-Smith for follow-up and medication refills on June 1, 2015 (Tr. 516). There was no physical examination.  *Id.*  Dr. McCrary-Smith refilled alprazolam (Tr. 516).  A few days later, she prescribed citalopram for depression (Tr. 515).

On July 17, 2015, Plaintiff returned to Ms. Guyton for diabetic care. (Tr. 513.) He reported that he had lost 15 pounds, walked 2-to-3 miles to the grocery store several times per week, biked 2-to-3miles daily, and lifted weights. (Tr. 513.) Ms. Guyton noted Plaintiff's blood glucose was improved on his new regimen and was also influenced by his increased exercise and weight loss. (Tr. 513.) His diabetes medications (metformin and glipizide) were continued. (Tr. 513.) A few weeks later, Dr. McCrary Smith made similar observations. (Tr. 512).

On September 1, 2015, Plaintiff returned to Dr. McCrary-Smith, complaining of anxiety, depression, and elevated blood pressure. (Tr. 508-10.) Upon examination, Plaintiff was alert and cooperative with normal muscle strength and tone throughout with no atrophy, spasticity, or tremors, and a normal gait and station. (Tr. 508-09.) Plaintiff also had a normal mental-status examination. (Tr. 509.) Dr. McCrary-Smith continued Plaintiff's medications. (Tr. 509.)

On December 16, 2015, Plaintiff saw Dr. McCrary-Smith, who noted Plaintiff was alert and cooperative; his peripheral vascular examination was normal; he had normal coordination and gait; and his diabetic foot examination was normal. (Tr. 502-03.) Dr. McCrary-Smith assessed diabetes mellitus, type 2, uncomplicated; anxiety; and depression. (Tr. 503.) She continued Plaintiff's medications and added tramadol. (Tr. 503.)

On March 23, 2016, Plaintiff returned to NCCHC complaining of hypertension, diabetes, and right hip and back pain. (Tr. 610-12.) Upon examination, Plaintiff was alert and cooperative with normal muscle strength and tone throughout with no atrophy, spasticity, or tremors, and a normal gait and station. (Tr. 610-11.) Plaintiff had full range of motion (ROM), but stiff joints, no pain with palpation, nasal congestion with discharge, and numbness of the right leg with palpation and touch. (Tr. 611.) The mental-status examination showed a normal affect and speech. (Tr. 611.) Plaintiff was noted to exhibit good general health. (Tr. 610.) Dr.

Carmel Boykin Wright assessed benign essential hypertension; diabetes mellitus with neurological manifestations, uncontrolled; blurred vision; peripheral neuropathy; sciatic nerve pain; and anxiety. (Tr. 610-12.) She continued his medications. (Tr. 611-12). Plaintiff was also prescribed singulair for his allergies. (Tr. 608.)

On June 21, 2016, Plaintiff returned to NCCHC and saw a nurse practitioner. Plaintiff stated his medications were effective and he needed refills. (Tr. 606-08.) He also noted that his anxiety and depression were stable with medication. (Tr. 606.) Upon examination, Plaintiff was alert and oriented; the neurological examination was normal; his mood and affect were normal; and he had full ROM with no back pain upon palpation. (Tr. 606-07.) Plaintiff obtained refills on his medications. (Tr. 607-08.)

On July 15, 2014, state-agency medical consultant Kyle DeVore, Ph.D., found Plaintiff had an anxiety-related disorder that caused no restrictions in his activities of daily living and social functioning; mild difficulties in maintaining concentration, persistence, and pace; and no episodes of decompensation. (Tr. 69.) Therefore, Dr. DeVore found that Plaintiff's anxiety-related disorder was non-severe. (Tr. 70.)

On June 24, 2016, Plaintiff attended a psychological consultative examination with Ann Levine, Psy.D. (Tr. 581-87.) Although Plaintiff alleged depression and anxiety, he stated that as long as he took his medication he was not anxious. (Tr. 581.) Regarding his depression, Plaintiff stated he felt down, but not hopeless. (Tr. 581.) He reported his anxiety and depression had improved. (Tr. 581.) Dr Levine noted Plaintiff had never received mental-health services. (Tr. 581.) Plaintiff stated he independently dressed and groomed himself; enjoyed getting out of the house; and spent time with his roommate. (Tr. 584.) Upon examination, Plaintiff was alert with appropriate grooming, hygiene, and eye contact; his gait and posture were

unremarkable; his affect was neutral; he reported his mood as good; speech and thought content were normal; memory was unremarkable; and he had appropriate insight and judgment. (Tr. 583.) Dr. Levine noted Plaintiff responded appropriately; and his persistence and pace appeared adequate. (Tr. 584.) Dr. Levine assessed unspecified depressive and anxiety disorders. (Tr. 584.) She concluded Plaintiff had no limitations in his ability to understand, remember, and carry out instructions. (Tr. 585.) Dr. Levine opined that Plaintiff had no limitations in interacting appropriately with the public and co-workers; a mild limitation in interacting appropriately with supervisors; and, based on his self-report of taking too long of a break at work in 2010, he had moderate limitations in his ability to respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 586.)

On June 24, 2016, Plaintiff attended a consultative examination with Austin Montgomery, M.D. (Tr. 567-78.) Plaintiff alleged a pinched nerve in the right hip with pain down the leg; high blood pressure; diabetes; and hernia surgery. (Tr. 567, 568.) Plaintiff reported anxiety and depression, but said he felt "okay on the present medication." (Tr. 567.) Plaintiff stated his treatment with tramadol and naproxen helped his leg pain. (Tr. 567.) Plaintiff further reported his high blood pressure was well-controlled with medication and he had no secondary organ effects from diabetes. (Tr. 567-68.) Plaintiff maintained that due to hernia surgery, he was not allowed to lift over 50 pounds. (Tr. 567-68.) Plaintiff's physical examination was normal, except for obesity and burns on his abdomen from frying food. (Tr. 568-69.) His musculoskeletal examination showed he had a normal gait and station, could walk on his heels and toes and get on and off the examination table, and had fine dexterous finger control. (Tr. 569.) Straight leg raising and ROM tests were normal or near normal. (Tr. 569, 577-78.) Plaintiff's vision was 20/20 with glasses. (Tr. 570.) Dr. Montgomery assessed

chronic pain with sciatic distribution; obesity; hypertension; and diabetes mellitus. (Tr. 569.)
He opined Plaintiff could lift and carry 50 pounds occasionally and 20 pounds frequently; he
could sit 8 hours per 8-hour workday; stand 5 hours per 8-hour workday; and walk 4 hours per 8-
hour workday. (Tr. 571-72.) Dr. Montgomery indicated Plaintiff could frequently climb stairs
and ramps; occasionally stoop, kneel, crouch, and crawl; and never climb ladders or scaffolds or
balance. (Tr. 574.)

## IV.    Discussion

### A.  Legal Standard

To be eligible for disability insurance benefits under the Social Security Act, Plaintiff
must prove he is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v.
Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security
Act defines disability as the "inability to engage in any substantial gainful activity by reason of
any medically determinable physical or mental impairment which can be expected to result in
death or which has lasted or can be expected to last for a continuous period of not less than 12
months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if his
physical or mental impairment or impairments are of such severity that he is not only unable to
his previous work but cannot, considering his age, education, and work experience, engage in
any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §
423(d)(2)(A).

Under the Social Security Act, the Commissioner has established a five-step process for
determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "'If a claimant
fails to meet the criteria at any step in the evaluation of disability, the process ends and the
claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005)

(quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590–91 (8th Cir. 2004)).  First, the claimant must not be engaged in "substantial gainful activity."  20 C.F.R. §§ 416.920(a), 404.1520(a).

Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 416.920(c), 404.1520(c).  "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'"  *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001)).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations.  20 C.F.R. §§ 416.920(d), 404.1520(d).  If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history.  *Id.*

Before considering step four, the ALJ must determine the claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite her limitations."  *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)).  At step four, the ALJ determines whether the claimant can return to her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011).  If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step.  *McCoy*, 648 F.3d at 611.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove that he is disabled. *Brantley v. Colvin*, No. 4:10CV2184 HEA, 2013 WL 4007441, at *3 (E.D. Mo. Aug. 2, 2013) (citation omitted). At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.* "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Meyerpeter v. Astrue*, 902 F.Supp. 2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider: 1) the credibility findings made by the ALJ; 2) the plaintiff's vocational factors; 3) the medical evidence from treating and consulting physicians; 4) the plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments; 5) any corroboration by third parties of the plaintiff's impairments; 6) the testimony of vocational experts, when required, which is

based upon a proper hypothetical question, which sets forth the claimant's impairment. *Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585–86 (8th Cir. 1992) (internal citations omitted). *See also Frederick v. Berryhill*, 247 F. Supp. 3d 1014, 1018–19 (E.D. Mo. 2017).

The Court must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, the Court must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). The Court may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

## B. **The ALJ's Decision**

The ALJ's Decision conforms to the five-step process outlined above. The ALJ found Plaintiff had not engaged in substantial gainful activity since June 9, 2014 (the application date).[5] (Tr. 28.) The ALJ found that Plaintiff's depression, anxiety, high blood pressure and hernia surgery were non-severe in nature. (Tr. 12-13, 16.) The ALJ determined Plaintiff's lumbar disc disease, obesity and diabetes mellitus were severe impairments, but that these impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 29-30.)

The ALJ found Plaintiff had the RFC to perform light work as defined in 20 CFR 416.967(b), except he

_____

[5] Although Plaintiff asserted he was disabled before filing his application for SSI, the relevant period began with the date of his SSI application because SSI benefits are not payable for a period prior to the application. *See Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989); 20 C.F.R. § 416.335. SSI benefits cannot be recovered retroactively. Thus, the time period at issue is from June 9, 2014, the date Plaintiff filed his application, through December 30, 2016, the date of the ALJ's decision (Tr. 10, 17, 160).

> could lift and carry 50 pounds occasionally and 20 pounds frequently; stand up to 3 hours in an 8-hour workday; walk up to 3 hours in an 8-hour workday; and sit up to 6 hours in an 8-hour workday; avoid climbing ladders, ropes, and scaffolds. He could occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl.

(Tr. 15.)  In making this finding, the ALJ summarized the relevant medical records, as well as Plaintiff's own statements regarding his abilities, conditions and activities of daily living.  While the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, he also found Plaintiff's statements about the intensity, duration and limiting effects of the symptoms were not entirely consistent with the medical and other evidence in the record.  (Tr. 15.)

Considering Plaintiff's RFC and his age, education, and work experience, the ALJ found vocational expert testimony to support a conclusion that Plaintiff could return to his past work as an assembler.  (Tr. 17.)  The ALJ therefore found Plaintiff not to be disabled.  *Id.*

### C.  Analysis of Issues Presented

In his *pro se* complaint, Plaintiff contends the final decision of the Commissioner was not based on substantial evidence in the record because he "feel[s he is] entitled to disability because of the nature and amount of illnesses that [he has]."  (ECF No. 5, at 1.)  Plaintiff provides no further explanation of how he believes the ALJ erred.  Plaintiff's three-page supporting brief only offers a summary of Plaintiff's impairments and symptoms, including newly alleged claims of four medical conditions that were not before the ALJ or presented to the Appeals Council.

Plaintiff's failure to present a clear argument for reversal makes it difficult for the Court to adjudicate his request for judicial review in a meaningful fashion.  *See Young v. Astrue,* 219 Fed. Appx. 840, 842 (10th Cir. Mar. 22, 2007) (unpublished op.) (holding in a social security appeal that a *pro se* claimant waived decisional errors in the administrative process through her "generalized and conclusory statements" that "wholly fail[ed] to frame or develop any perceived

error in the Commissioner's decision" (citation omitted)).   Plaintiff also failed to offer a specific argument when he filed his request for review with the Appeals Council.  Plaintiff merely stated "I think the decision was wrong because of my health conditions."  (Tr. 158.)  Nevertheless, because Plaintiff is *pro se*, and due to the Court's commitment to reaching the merits of every case, particularly Social Security disability cases where there is a possibility that a plaintiff is entitled to benefits, the Court will review the ALJ's decision.  As just stated, Plaintiff does not clearly assign error to the Commissioner's final decision, but instead indicates it is wrong because he has a number of impairments and disabling symptoms.  The Commissioner interprets Plaintiff's brief as arguing the ALJ's 5-step disability determination was not supported by substantial evidence.  The Court finds the Commissioner's statement of the issue is a fair construction of Plaintiff's brief.  As such, the issue before the Court is whether the disability determination is supported by substantial evidence.  As more fully addressed below, the Court will affirm the Commissioner's decision.

## The ALJ's Determination of the Severity of Plaintiff's Impairments

As noted above, while the ALJ determined Plaintiff's lumbar disc disease, obesity and diabetes mellitus were severe impairments, he concluded Plaintiff's depression, anxiety, high blood pressure and hernia surgery were non-severe.  Substantial evidence supports the ALJ's determination.  A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the claimant's statement of symptoms.  20 C.F.R. § 404.1508.  To be considered severe, an impairment must significantly limit a claimant's ability to do basic work activities.  See 20 C.F.R. § 404.1520(c).  An impairment is "nonsevere" if it has no more than minimal impact on an individual's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1521(a) and 416.921(a).  "Basic

work activities" include mental functions such as seeing, hearing, speaking, using judgment, responding appropriately to coworkers and work situations, and understanding, carrying out and remembering simple instructions. 20 C.F.R. § § 404.1521(b) and 416.921(b). Slight abnormalities that have no more than minimal effect on a claimant's ability to do basic work activities are not considered severe. *Hudson v. Bowen*, 870 F.2d 1392, 1395 (8th Cir. 1989). It is the claimant's burden to establish that his impairment or combination of impairments are severe. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citing *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000)). "Severity is not an onerous requirement for the claimant to meet, . . . but it is also not a toothless standard." *Id.* at 708.

With regard to Plaintiff's hernia repair surgery, the ALJ concluded it was non-severe in nature as Plaintiff made a "good recovery" and there was no evidence he experienced significant limitations as a result. The Court finds the ALJ's assertion borne out by the record. Plaintiff's treatment records are devoid of physical complaints related to his surgery other than his assertion that he was restricted from lifting over 50 pounds. (Tr. 72.) There is no evidence Plaintiff sought post-surgery care. Moreover, examination records repeatedly showed a normal abdomen, gait and station.

The ALJ's finding that Plaintiff's high blood pressure was non-severe is also supported by substantial evidence on the record. Plaintiff's treatment records establish he was prescribed lisinopril and norvasc for his diagnosis of benign essential hypertension. The records further reflect that he responded well to the medication, experienced no side effects, and even reported that his high blood pressure was well controlled. Evidence that medication improved and controlled Plaintiff's symptoms supports the ALJ's determination that his hypertension was non-severe. *See Wildman v. Astrue*, 596 F.3d 959, 965 (8th Cir. 2010) (impairment that can be

controlled by treatment or medication cannot be considered disabling); *Moore v. Astrue*, 572 F.3d 520, 524–25 (8th Cir. 2009) (claimant's ability to manage back and knee pain through medication is inconsistent with alleged disabling level of pain).

The ALJ also properly concluded Plaintiff's impairments of depression and anxiety were non-severe. The ALJ specifically addressed each of the four broad areas of mental functioning set out in the disability regulations, known as the "Paragraph B Criteria." The ALJ found Plaintiff had mild limitations in the activities of daily living, mild restrictions in his social function, mild limitations in concentration, persistence or pace, and experienced no episodes of decompensation of extended duration. Mild limitations typically indicate that a mental impairment is not severe. 20 C.F.R. §§ 404.1520a (d)(1) and 416.920a(d)(1).

The ALJ's conclusions regarding Plaintiff's mental functioning are supported by the record. Plaintiff's treatment history reflects normal mental status examinations. Plaintiff's treating physicians consistently recorded he exhibited a normal mood and affect. The record, including Plaintiff's own admission, shows his symptoms were well-controlled with alprazolam and citalopram. Evidence that medication improved and controlled Plaintiff's symptoms supports the ALJ's determination that Plaintiff's mental impairments were non-severe. *See Wildman*, 596 F.3d at 965. In addition, there is no evidence Plaintiff sought mental health treatment. The absence of any evidence of ongoing counseling or psychiatric treatment disfavors a finding of disability. *See Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (citing *Dixon v. Sullivan,* 905 F.2d 237, 238 (8th Cir.1990)). Finally, the testimony of Dr. Reid at the evidentiary hearing and the medical opinions of Dr. DeVore and Dr. Levine regarding Plaintiff's mental

impairments are consistent with the other evidence of record and support the ALJ's

determination that the impairments were non-severe.[6]

### **Impairments Not Alleged before the ALJ**

As noted above, in his brief supporting his complaint, Plaintiff claims to suffer from

impairments he did not allege before the ALJ or Appeals Council.  Specifically, Plaintiff asserts

new conditions of arthritis, panic attacks, allergies and bone spurs.  Plaintiff did not list any of

these impairments in his disability report or provide testimony about them at the administrative

hearing.  The ALJ is not obligated to investigate a claim not presented at the time of application

for benefits and not offered at the hearing as a basis for disability.  *Halverson v Astrue*, 600 F.3d

922, 934 (8th Cir. 2010) (citing *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008)).

Furthermore, the Court notes the record does not support a finding that Plaintiff's alleged

impairments are severe in nature.

Specifically, with regard to Plaintiff's claim of arthritis and bone spurs in his foot, there

is no objective medical evidence or diagnosis of either condition in the record.  Nor do the

treatment records reflect Plaintiff complained of arthritis or bone spurs to his providers.

Although Plaintiff claims he took anti-inflammatory and pain medications for these alleged

impairments, these medications were prescribed for other conditions.  In addition, evidence of

Plaintiff's activities is inconsistent with severe limitations arising from these alleged conditions.

---

[6] Although Dr. Levine found Plaintiff had moderate limitations in his ability to respond to work situations, the Court finds the ALJ properly discounted this part of her determination.  The ALJ reasoned Dr. Levine had improperly based her assessment on a single incident in 2010 (Plaintiff's report of his termination for staying on break too long) that occurred long before the time period relevant to this decision.  Moreover, the ALJ was entitled to rely on the testimony of Dr. Reid, who found Plaintiff had mild, not moderate, limitations in responding appropriately to work situations and concluded Dr. Levine's determination was too narrowly based on an isolated incident.

Plaintiff stated to his clinical pharmacist, Ms. Guyton, that he walked 2-to-3 miles to the grocery store several times per week, biked 2-to-3 miles daily, and lifted weights.

Similarly, although Plaintiff newly contends he has panic attacks, there is no evidence he reported the attacks to his providers. Plaintiff did present claims that he suffered from anxiety and depression, but, as noted above, these impairments were controlled with medication and his mental examinations were normal. Plaintiff also claims he suffers from allergies and has constant mucous in his chest and nose. The record does establish Plaintiff was treated on two occasions for his allergies and prescribed medication. Nevertheless, the record otherwise shows Plaintiff had normal physical exams with respect to his lungs, chest and sinuses. The record does not support Plaintiff's assertion that he suffered constant, year-long allergy symptoms as alleged in his brief.

## The ALJ's Determination of Plaintiff's RFC

Substantial evidence also supports the ALJ's determination of Plaintiff's RFC. The ALJ found Plaintiff had the RFC to perform light work as defined in 20 CFR 416.967(b), except he

> could lift and carry 50 pounds occasionally and 20 pounds frequently; stand up to 3 hours in an 8-hour workday; walk up to 3 hours in an 8-hour workday; and sit up to 6 hours in an 8-hour workday; avoid climbing ladders, ropes, and scaffolds. He could occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl.

(Tr. 15.) The RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(a). The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis. 1 SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of her limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). The

burden to prove the RFC rests with the claimant, however, and not with the Commissioner. *Id.* An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

Here, the ALJ's RFC determination is consistent with and supported by treatment records, various medical opinions, and Plaintiff's own account of his daily activities. As discussed above, the Court found substantial evidence in support of the ALJ's conclusion that Plaintiff's mental impairments were controlled by medication and he only had mild limitations in the four broad areas of mental functioning. Similarly, the record adequately supports the ALJ's determination that Plaintiff's high blood pressure was well-controlled by medication. With regard to Plaintiff's allegation of restrictions from his hernia repair, the limits set forth in Plaintiff's RFC are consistent with his own averment that his doctor limited him to carrying 50 pounds or less due to his surgery. The opinions of Dr. Montgomery and Dr. Ezike support the RFC as they both opined Plaintiff could lift and carry 50 pounds occasionally.

The record also supports a finding that the ALJ properly accounted for Plaintiff's severe impairments of obesity, diabetes, and lumbar disc disease in his RFC. In his brief, Plaintiff alleges hip pain radiating down his leg and neuropathy and circulation problems resulting from diabetes. The ALJ addressed Plaintiff's leg and hip pain, concluding that it caused only mild limitations. The record bears out this conclusion. Although Plaintiff sought treatment for his lower back pain and sciatica, his condition responded to medication. Plaintiff reported treatment with tramadol and naproxen helped his leg pain. Plaintiff's physical examinations reflected normal gait and station, normal muscle strength and no range of motion limitations. Plaintiff's diabetic foot examination was normal.

Moreover, Plaintiff's own reports of his daily activities support his RFC. Plaintiff claimed he was able to walk 2-3 miles to the grocery store several times a week and that he biked 2-to-3 miles daily. With regard to the impact of diabetes on his vision, although the record shows Plaintiff reported blurred vision to his primary care doctor in 2015, there is no evidence he saw an eye doctor and, in June 2016, Plaintiff had 20-20 vision with glasses.

The ALJ relied on the medical opinion of consultative examiner, Dr. Montgomery, and the testimony of Dr. Ezike in determining Plaintiff's RFC. The ALJ did not err in affording weight to these opinions as they are consistent with and supported by substantial evidence on the record. In sum, the ALJ thoroughly discussed specific facts as well as nonmedical evidence of record, addressed the consistency of this evidence when viewed in light of the record as a whole and assessed Plaintiff's RFC based upon the relevant, credible evidence of record. *See* SSR 96-8p. Accordingly, the Court finds the ALJ properly determined Plaintiff's RFC. Moreover, because the hypothetical posed to the vocational expert included the RFC limitations properly determined by the ALJ, the ALJ did not err in relying on the expert's opinion given in response to this hypothetical. *See Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005).

## V.     CONCLUSION

Social Security benefits are reserved to those who cannot work due to their impairments. The Court is strongly committed to reaching the merits of every case, particularly Social Security disability cases where there is a possibility that a plaintiff is entitled to benefits. *See Goldsmith v. Comm'r of Soc. Sec.,* No. 3:12–cv–191, 2013 WL 3989642, at *5 (S.D.Ohio Aug.2, 2013). Here, substantial evidence supports the determination that Plaintiff could perform his past work despite his impairments. In order to reverse the ALJ's decision, Plaintiff was required to demonstrate to the Court that he did not apply the law correctly, or that his decision is not

supported by the evidence. He has not done so. Therefore, the Court has no choice but to affirm the final decision of the Commissioner.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is affirmed, and Steven Azar's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.

So ordered this 4th day of June, 2019.

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE